UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

BRUCE X. COOPER,                              :
                                              :
       Plaintiff                         :
                                              :
   v.                                         : CIVIL NO. 3:CV-07-0620
                                              :
JEFFREY BEARD, et al.,                        : (Judge Kosik)
                                              :
       Defendants                        :

**M E M O R A N D U M**

**I.    Background**

Bruce X. Cooper, an inmate currently confined at the State Correctional Institution at Frackville (SCI-Frackville), Pennsylvania, originally filed this action in the Schuylkill County Court of Common Pleas, Pennsylvania. On March 30, 2007, Defendants filed a Notice of Removal in this court. In the civil rights complaint pursuant to 42 U.S.C. § 1983, Plaintiff names the following Department of Corrections defendants: Jeffrey Beard, Secretary; Sharon Burkes, Chief Grievance Officer; and Ulrich Klemm, Administrator of Religions and Voluntary Services. Also named as defendants are SCI-Frackville employees Robert Shannon, Superintendent, and Chaplain Barry Brown, Director of Religions. In the complaint, Plaintiff alleges that Defendants violated his rights under the First and Fourteenth Amendments and

the Religious Land Use and Institutionalized Person Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq., by failing to allow him to freely practice his choice of religion - - Muhammad's Temple of Islam (also referred to as the Nation of Islam). On April 3, 2007, Defendants filed a motion to dismiss the complaint. (Doc. 2.) The motion is presently before the court for consideration. For the reasons that follow, the motion will be granted in part and denied in part.

**II.    Allegations in the Complaint**

In his complaint, Plaintiff claims to be a follower of the Islamic beliefs as taught by the Honorable Elijah Muhammad, the Messenger of Allah, who came in the person of Master W. Fard Muhammad. He contends that Defendants are depriving him of his right to freely practice his choice of religion and only provide him with the opportunity to participate in a Sunni/Shiite program that does not follow the teachings of Muhammad. He specifically contends that Defendants have failed to provide him with separate services and Ramadan fasts that abide by his religion. He further points out that the Islamic representative in the prison is titled an "Iman" and that there are only "ministers" in Muhammad's Temple of Islam.

Plaintiff states that he believes he has exhausted all available remedies, and sets forth the exhaustion efforts he has pursued. He states that on November 6, 2006, he filed a grievance wherein he requested separate services, reading material, outside guest speakers and cassettes. He also requested the ability to fast in December. He

states that his grievance was denied on November 13, 2006, and he appealed the denial to Defendant Shannon on the same date.  Shannon denied his appeal on November 21, 2006.  Plaintiff thereafter states he immediately appealed to the Central Office level where Defendant Burks subsequently denied his appeal on December 21, 2006. (Doc. 1, Notice of Removal, Ex. D Compl. at ¶ 15.)  In filing this action alleging the violation of his constitutional rights, he requests declaratory, injunctive and special damages relief.  Defendants have filed a motion to dismiss the complaint on the basis of failure to exhaust available administrative remedies.  They further contend that Defendant Beard is subject to dismissal in that the complaint contains no allegations of personal involvement on Beard's part.

### III.  Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of a claim or claims for "failure to state a claim upon which relief can be granted. . . ."  In evaluating whether a claim is subject to dismissal, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the Plaintiff.  See Mariana v. Fisher, 338 F.3d 189, 195 (3d Cir. 2003). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 44-46 (1957); see

also <u>Lum v. Bank of America</u>, 361 F.3d 217, 223 (3d Cir. 2004).[1]  A litigant should be granted leave to amend, but not if amendment would be inequitable or futile. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).

## IV. Discussion

### A. Exhaustion

Defendants maintain that the complaint is subject to dismissal on the basis of failure to properly exhaust administrative remedies.  Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law.  <u>See</u> 42 U.S.C. § 1997e(a); <u>Woodford v. Ngo</u>, 126 S. Ct. 2378 (2006).  The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).  The PLRA also mandates

---

[1] In the recent case of <u>Bell Atlantic Corporation v. Twombly</u>, ___ U.S. ___, 127 S.Ct. 1955 (May 21, 2007), the United States Supreme Court appears to have abrogated the holding in <u>Conley</u> to the extent that dismissal for failure to state a claim does not require appearance, beyond a doubt, that plaintiff can prove no set of facts in support of claim that would entitle him to relief, although once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegation in the complaint. In other words, the Court found that ". . . the Conley case described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." <u>Id</u>. at 1969. Thus, while a complaint does not need to set forth detailed factual allegations, a plaintiff is required to provide more than labels and conclusions and a mere recitation of the elements of a cause of action to survive a motion to dismiss. A right to relief must be presented as more than just abstract. <u>Id</u>. at 1965.

4

that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford, 126 S. Ct. At 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill, 372 F.3d at 227-32 (3d Cir. 2004).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. Jones v. Bock, 127 S. Ct. 910, 921 (2007). Failure to exhaust available administrative remedies is an affirmative defense. As such, it must be pleaded and proven by the Defendants. Id.; Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

The Pennsylvania Department of Corrections has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. 37 Pa. Code § 93.9(a) (West 2003); see also www.cor.state.pa.us, DC-ADM 804, Inmate Grievance System Policy. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the prison Grievance coordinator for initial review. An inmate may appeal the decision of the Grievance coordinator to the Superintendent of the institution, and can finally appeal to the Secretary of the Department of Corrections Office of Inmate Grievances and

Appeals. See Booth v. Churner, 206 F.3d 289, 292 n.2 (3d Cir. 2000)(discussing Pennsylvania's Inmate Grievance System).

Department of Corrections Administrative Directive 819 addresses the DOC's policies with respect to religious activities. The purpose of this policy statement is to establish procedures to accommodate inmates' religious beliefs while they are in DOC custody. DC-ADM 819 (VI)(G) addresses the matter of accommodations and the procedure to be employed for requesting a religious accommodation. The procedure encompasses the following. A request for an accommodation must be made via a DC-52 Inmate Religious Accommodation Request Form and submitted to the Facility Chaplaincy Program Director (FCPD). The inmate must obtain written information from his outside faith group that describes the goals, beliefs and practices of the group and supply this information to the FCPD for review. The Religious Accommodation Review Committee[2] shall review each inmate's request for a religious accommodation within 45 days of receipt, and forward a recommendation to the affected Regional Deputy Secretary. The Regional Deputy Secretary shall, within 15 days of receiving the recommendation from the Director of the Bureau of Inmate Services/designee, approve/disapprove the request and notify the Director of the Bureau of Inmate Services of the decision. Thereafter, within 10 days, the

---

[2] This is a committee comprised of various Religious Faith Group Leaders and Central Office staff that reviews inmates' requests for religious accommodations. See DC-ADM (IV)(K).

6

Director of Bureau of Inmate Services shall inform the Facility Manager and the FCPD of the requesting facility of the determination and make sure copies of all final determinations are provided to all Deputy Secretaries and Facility Managers.  The FCPD shall be responsible for informing the inmate of the outcome of the request no later than 10 working days from the date that the determination of approval/disapproval is received. If the inmate is informed by the FCPD that the request will not be accommodated, the inmate may then file a grievance in accordance with the DOC's inmate grievance procedure in DC-ADM 804 as set forth above.  DC-ADM 819(VI)(G)(2)(g) specifically states that grievances may only be submitted <u>after</u> the inmate has received notification of the decision on the requested accommodation.

     In their motion to dismiss, Defendants argue that Plaintiff has failed to properly exhaust his claims in accordance with the above procedures.  Specifically, Plaintiff prematurely filed and pursued a grievance before receiving a decision on his request for a religious accommodation from the regional deputy secretary.  In support of their argument, they submit the declarations of Defendant Ulrich Klemm (Doc. 12, Ex. A) as well as Tracy Pollock, Grievance Review Officer in the Secretary's Office of Inmate Grievances and Appeals (<u>Id</u>., Ex. B).  Attached to each declaration are various documents pertaining to the exhaustion issue including relevant DOC policy statements, Plaintiff's Religious Accommodation Request Form and responses

7

thereto, and grievance/appeals Plaintiff has filed along with the responses thereto.[3]

Defendants state that Plaintiff submitted a religious accommodation request on August 3, 2006, which sought a Nation of Islam study group, audio and video tapes and guest speakers at SCI-Frackville.  (Doc. 12, Ex. A ¶ 9; Ex. A-1.)  After reviewing the request, prison staff and the Superintendent recommended disapproval.  (Id. Ex. A ¶ 10, Ex. A-1.)  The request was forwarded to the Religious Accommodation Review Committee and received on August 24, 2006.  (Id.) Prior to the Committee completing its review, Plaintiff submitted a grievance via the DOC Administrative Remedy Procedure.  The grievance was filed on November 6, 2006, and sought weekly services, a Ramadan fast, reading materials, audio cassette and guest speakers for Muhammad's Temple of Islam inmates at SCI-Frackville.  (Doc. 12, Ex. B ¶ 12, Ex. B-2.)

The grievance proceeded as follows.  It was assigned to Brenda Tritt, the Corrections Classification Program Manager at SCI-Frackville, for a response.  On November 13, 2006, Tritt responded by informing Plaintiff that the prison presently offers Islamic Services and that, in any event, Plaintiff's proper course of action was a religious accommodation request.  (Id. Ex. B ¶ 13; Ex. B-2.)  An appeal was filed the

---

[3] Given that the exhaustion issue turns on the indisputably authentic documents related to Plaintiff's administrative remedies, the court will consider these documents without the need to convert the motion to one for summary judgment.  See Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004).

8

same day to Defendant Shannon, as the prison's superintendent. Because that appeal was rejected, a second appeal was submitted on November 15, 2006. (Id., Ex. B ¶ 14, Ex. B-2.) Shannon responded to both appeals on November 21, 2006. (Id., Ex. B ¶15, Ex. B-2.) The grievance was denied on the basis that Plaintiff should have pursued his issue via the religious accommodation review process.

An appeal was thereafter pursued to the Office of Inmate Grievances and Appeals. (Doc. 12, Ex. B ¶ 15, Ex. B-2.) Defendant Burks responded to the appeal on December 21, 2006, stating that there were currently Islamic services at the prison and also that Plaintiff had failed to address his request for a religious accommodation to the religious accommodation committee.

While the above grievance was proceeding through the grievance appeal process, the Religious Accommodation Review Committee completed its review of Plaintiff's accommodation request. On November 13, 2006, the committee recommended that the request for separate study group for Nation of Islam inmates be denied. However, it stated that Muslim services and the Ramadan fast are already available for SCI-Frackville inmates, that outside speakers may be permitted with the approval of the superintendent and that donated tapes may be permitted upon approval by the FCPD. (Doc. 12, Ex. A ¶¶ 10-11; Ex. A-2.) Donald Kelchner, Supervision Superintendent, concurred with the recommendation, and Defendant Shannon, SCI-Frackville Superintendent, was notified of the decision on November

9

30, 2006.  (Id., Ex. A ¶ 11; Ex. A.2.)  Plaintiff never submitted a grievance through the DC-ADM 804 grievance procedure following the decision on his Religious Accommodation Request.

Based on the foregoing, Defendants contend that Plaintiff has failed to exhaust his claims since there is no question he failed to abide by DOC policy 819 which states that grievances may only be submitted after the inmate has received notification of the decision on the requested accommodation. In this case, the notification was not received until November 30, 2006, however Plaintiff filed his grievance on November 6, 2006.

In opposing Defendants' motion, Plaintiff does not dispute that he filed a grievance prior to receiving notification of the decision regarding his requested religious accommodation.  He maintains, however, that he did so because the Religious Accommodation Review Committee failed to comply with DC-ADM 819(VI)(G)(2)(d) by reviewing his request for accommodation within 45 days and forwarding a recommendation to the Regional Deputy Secretary.[4]  Plaintiff argues that because the Committee did not issue a recommendation within the required 45 day period, he waited several additional weeks for a recommendation to issue.  When

---

[4] Both parties agree that the Religious Accommodation Review Committee received Plaintiff's request for an accommodation on August 24, 2006, but never made a recommendation on the request until November 13, 2006, approximately 80 days later.

10

the Committee failed to act, he states he pursued the next level of "available administrative remedies" - - that of the grievance system. (Doc. 14 at 3.) It was his belief that he had no other meaningful exhaustion remedy available since the Religious Accommodation Request Committee appeared to be a dead end based upon their lack of action on his request.

      Plaintiff's argument is well-taken. While Defendants attempt to hold Plaintiff to the strict reading of the DOC policies, they fail to mention their failure to follow their own policy. After waiting an ample amount of time following the Committee's failure to timely respond to his accommodation request, Plaintiff had every reason to believe pursuing said relief was "unavailable" to him. He then filed a grievance and pursued it through all of the required channels of the DOC's grievance procedure. As it turns out, the religious accommodation request was granted only to the extent that outside speakers would be permitted with the Superintendent's approval and donated tapes permitted with the approval of the FCPD. The request was denied in all other respects as to separate services/study groups for NOI inmates and any type of separated service/Ramadan fast other than what the prison presently offers.

      While there is no question that Plaintiff has not strictly complied with the exhaustion requirements regarding a religious claim, the court finds exhaustion to be met under the circumstances of this case. Based on Defendants failure to strictly comply with the requirements for addressing Plaintiff's request for an

11

accommodation[5] as well as the facts that (1) Plaintiff did substantially comply with the DOC exhaustion requirements and (2) both the Religious Accommodation Committee and the required levels of the DOC grievance system have addressed Plaintiff's claims, the court finds that the spirit of the PLRA's exhaustion requirement has been met. Plaintiff attempted to follow the required exhaustion procedures in place in an effort to allow the DOC an opportunity to address his claims in the first instance. While he has not "properly" exhausted, it would serve no purpose to make Plaintiff pursue the exact same religious accommodation request and then file the exact same grievance under the circumstances of this case. Accordingly, the motion to dismiss on the basis of exhaustion will be denied.

B.     Dismissal of Defendant Beard

Defendants also maintain the Defendant Beard should be dismissed from this action on the basis of lack of personal involvement. In order to ". . .state a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir.), cert. denied,

---

[5] While Defendants are not required to file a reply brief regarding their motion to dismiss, it is interesting they chose not to address Plaintiff's arguments in response to their exhaustion argument. For example, this does not appear to be a case where the Religious Accommodation Request Committee informed Plaintiff that there would be a delay in responding to his request for some reason.

516 U.S. 858 (1995). It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs . . . Personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Further, liability may not be imposed under § 1983 on the traditional standards of respondeat superior. Rode, 845 F.2d at 1207-08.

In the complaint, Plaintiff states that Beard is the "over all maker and creator of institutional policies, rules and regulations germane to the supervision and running of Pennsylvania State prisons . . . ." (Doc. 1 at Ex. D, Compl. p.2.) In his brief in opposition to Defendants' motion, he states that Beard is liable as the ultimate decision maker for the DOC and because he has the final "say so" on all decisions. He further argues that Beard is liable for his failure to ensure that his direct subordinates carried out his written policies. It is evident in reviewing Plaintiff's submissions that he seeks to impose liability on Beard in his capacity as Secretary of the DOC. However, liability may not be imposed on the basis of respondeat superior. Accordingly, Defendants' motion to dismiss Beard from this action will be granted. An appropriate Order follows.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

BRUCE X. COOPER,                :
                                :
        Plaintiff               :
                                :
    v.                          :    CIVIL NO. 3:CV-07-0620
                                :
JEFFREY BEARD, et al.,          :    (Judge Kosik)
                                :
        Defendants              :

# **O R D E R**

**NOW, THIS 2nd DAY OF JULY, 2007,** in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. Defendants' Motion to Dismiss the Complaint (Doc. 2) is **granted in part and denied in part**. The motion is granted to the extent that Defendant Beard is dismissed from this action. The motion is denied in all other respects.

2. Within twenty (20) days from the date of this Order, the remaining Defendants shall file their answer to the complaint.

*s/EDWIN M. KOSIK*
United States District Judge